UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **RODNEY D. DRIVER,** **Plaintiff** v. **TOWN OF RICHMOND**, by and through its Treasurer, **DAVID KRUGMAN**, and **RAYMOND A. DRISCOLL,** in his individual and official capacities as Chief of Police of the Town of Richmond, **Defendants** | : | CA 07 291S C.A. No. 07- |

## COMPLAINT

### I. Introductory Statement

This action is brought by the Plaintiff seeking declaratory and injunctive relief for acts and/or omissions of Defendants in violation of Plaintiff's right to freedom of speech protected under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and under Article 1, §21, of the Rhode Island Constitution.

### II. Parties

1. Plaintiff Rodney D. Driver is a resident of the Town of Richmond, County of Washington, State of Rhode Island.

2. Defendant Town of Richmond ("Town") is a duly authorized and organized municipality under the laws of the State of Rhode Island and is sued by and through its Treasurer, David Krugman, the official designated by state law, R.I.G.L. §45-15-5, to be named in a suit for relief against the Town.

3. Defendant Raymond A. Driscoll is sued in his individual and official capacities as the Town Chief of Police. The Chief of Police is the principal policy-making official of the Town Police Department.

### III. Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1367, 2201 and 2202.

## IV. Venue

5. Venue is proper in this Court since all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

## V. Materials Facts

### Chronology of Events

6. At all relevant times, Plaintiff was a candidate for the United States Congress in the Second District of Rhode Island.

7. At all relevant times, the owners of real estate located at 75 Richmond Townhouse Road, Route 112, Richmond, Rhode Island ("property"), which is situated opposite the Washington County Fair Grounds ("fair grounds"), authorized Plaintiff to display on their property a two (2') foot by (4') foot political campaign sign promoting his candidacy ("sign") during the Washington County Fair ("fair").

8. The sign was posted directly opposite the only motor vehicle ingress and egress and main entrance to the fair grounds, where thousands of patrons must pass during the course of the fair each year.

9. The fair typically takes place during the third week of August.

10. On or about August 2002, the sign posted on the property by Plaintiff was removed on more than one occasion.

11. Plaintiff subsequently learned that it was Defendant Driscoll who had removed the signs. When confronted, Defendant Driscoll clamed that Plaintiff needed written permission to post signs on private property.

12. Subsequently, although he did not believe he was legally required to, Plaintiff provided Defendant Driscoll with the written authorization from the owners and re-posted the sign without further incident.

13. On or about August 2006, Plaintiff posted the sign in the same location as he did in August 2002. Once again, the sign was taken down.

14. After replacing the sign on several occasions, Plaintiff left a message for Defendant Driscoll at the Town Police Department.

15. On or about August 18, 2006, Defendant Driscoll left the following reply on Plaintiff's phone answering machine:

> Good Morning. This is Chief Driscoll from the Richmond Police Department returning your call about your sign. I did take your sign down. It's laying on the ground next to where you had it erected. The reason I took it down was for police officer safety. We have officers doing traffic there, and I don't want any distractions around the intersections. And that's all it's about.
>
> Where I found the sign it was off the paved portion of the road. But it was well within the highway boundary, the state highway boundary—something that is not permitted anyway.
>
> So if you have any other questions at all besides that police-officer safety issue, please feel free to give me a call at the station. The number here is 539-8289. Thank you.

16. As best as could be determined according to information provided by personnel in and from records on file with the Rhode Island Department of Transportation, the state highway boundary extends out approximately seventeen (17') feet from the centerline of Route 112.

17. The sign had been erected more than twenty (20') feet from the centerline of Route 112 and six (6') feet from the edge of the asphalt paving of the road.

18. Subsequently, Plaintiff re-posted the sign on the property approximately twenty-nine (29') feet from the centerline of Route 112 and fourteen and one-half (14 ½') feet from the edge of the asphalt paving of the road.

19. Plaintiff simultaneously erected two smaller signs on the property, both of which were more than twenty (20') feet from the centerline of Route 112 and six (6') feet from the edge of the asphalt paving of the road.

20. By the following morning, all three signs had been taken down.

21. Subsequently, Plaintiff again erected the sign approximately twenty-nine (29') feet from the centerline of Route 112 and attached a note addressed to Defendant Driscoll which read as follows: "This sign is on private property, well outside the highway right of way."

22. This sign was not taken down. Instead, Defendant Driscoll caused a police cruiser with its roof lights flashing to be parked directly in front of and blocking the sign.

**The Road Sign Statute**

23. At all relevant times, Defendant Driscoll claims to have acted under the authority of Rhode Island General Laws §11-22-2, entitled "Injuries to road signs--Advertising on highway."

24. Section §11-22-2 ("road sign statute") reads as follows in pertinent part:

> A person who willfully or maliciously: (1) displaces, removes, injures, destroys, or places a political advertisement on a mile board, mile stone, danger sign or signal, or guide sign or post, or any inscription on it, lawfully within a public highway; (2) in any manner paints, prints, places, puts, or affixes, or causes to be painted, printed, placed, or affixed, any business, commercial advertisement on or to any stone, tree, fence, stump, pole, building, or other object which is the property of another, without first obtaining the written consent of the owner, or (3) in any manner paints, prints, places, puts, or affixes, or causes to be painted, placed, or affixed, an advertisement on or to any stone, tree, fence, stump, pole, mile board, mile stone, danger sign, danger signal, guide sign, guide post, billboard, building, or other object within the limits of a public highway, without first obtaining the written consent of the chief of police of the city or town in which the highway is located; is punishable by a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment for not more than ten (10) days, or both. * * * Any advertisement in or upon a public highway in violation of the provisions of this section may be taken down, removed or destroyed by anyone. * * *

**Restrictions on Plaintiff's Free Speech**

25. Plaintiff's right to freedom of expression was substantially damaged and curtailed as a result of the conduct of Defendants, specifically the impairment of his ability to communicate his political candidacy to thousands of potential voters attending the 2006 fair, which took place between August 16-20, 2006.

26. In future elections, Plaintiff may run for political office and would like and intends to erect and display political signs in the same location or similar locations adjacent to public highways within the Town to promote his candidacy.

27. In future elections, Plaintiff would like and intends to erect and display political signs in the same location or similar locations adjacent to public highways within the Town to communicate and express his support and belief in prospective political candidates.

28. Plaintiff faces potential criminal prosecution and sanctions under the road sign statute if he erects and maintains political signs in the same location or similar locations adjacent to public highways within the Town, unless he first obtains the consent of the Chief of Police.

**The Importance of Political Signs**

29. The Supreme Court has held that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office."[1]

30. Communication by signs and posters is virtually pure speech.[2]

31. The Supreme Court has further held that residential signs are a form of unique expression entitled to the highest degree of protection under the Free Speech Clause of the First Amendment.[3]

32. Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other

---

[1] *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 223 (1989).

[2] *Arlington County Republican Comm. v. Arlington County, Virginia,* 983 F.2d 587, 593 (4th Cir. 1993)(citing *Baldwin v. Redwood,* 540 F.2d 1360, 1366 (9th Cir.1976), *cert. denied, sub nom., Leipzig v. Baldwin,* 431 U.S. 913 (1977)).

[3] *City of Ladue v. Gilleo*, 512 U.S. 43, 57-59 (1994); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981)("The outdoor sign or symbol is a venerable medium for expressing political, social and commercial ideas. From the poster or 'broadside' to the billboard, outdoor signs have played a prominent role throughout American history, rallying support for political and social causes.")(internal citation and quotations omitted).

means, insofar as, by their location, such signs provide information about the identity of the "speaker."[4]

33. A person who puts up a sign at his or her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means.[5]

34. Residential signs are an unusually cheap and convenient form of communication, particularly for a person of modest means or limited mobility, where a yard or window sign may have no practical substitute.[6]

35. Many people do not have the time to actively participate in political campaigns, nor do they have the money to make substantial financial contributions to candidates or causes they support.

36. Political signs are an inexpensive and simple means by which people of modest means may become involved in political campaigns and show their support for a candidate or cause.

37. Political sign restrictions generally have the effect of favoring incumbents over challengers, since one of the major obstacles for any challenger in a political campaign is name recognition—something which the challenger usually lacks and an incumbent usually has.

38. Political signs are a simple and inexpensive means for a candidate without significant finances or name recognition to make his or her name known in the community.

**First Amendment Statutory Facial Challenge**

39. It is well settled that when a statute vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, permission.[7]

---

[4] *City of Ladue*, 512 U.S. at 56.
[5] *Id.* at 57.
[6] *Id.*
[7] *City of Lakewood v. Plain Dealer Pub.* Co., 486 U.S. 750, 755-756 (1988); *accord Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 129 (1992); *Freedman v. Maryland,* 380 U.S. 51, 56 (1965)("In the area

40. It is further well established in the area of freedom of expression that an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable.[8]

41. This exception from general standing rules is based on an appreciation that the very existence of broadly written laws has the potential to chill the expressive activity of others not before the court.[9]

42. In the area of free expression a statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.[10]

43. Such censorship engenders identifiable risks to free expression that can be effectively alleviated only through a facial challenge.

44. First, the mere existence of a government official's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused.[11]

45. Second, the absence of express standards makes it hard to distinguish between a legitimate denial of a permit and an illegitimate abuse of censorial power, making "as applied" challenges difficult, time consuming and expensive, such that speakers of modest means are more likely to capitulate to the views of the censor rather than mount a challenge.[12]

---

of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, *whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license* ")(emphasis added); *Lovell v. Griffin*, 303 U.S. 444, 452-453 (1938)("As the ordinance [providing for unbridled licensing discretion] is void on its face, it was not necessary for appellant to seek a permit under it").

[8] *Forsyth County*, 505 U.S. at 129; *accord City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798-799, and n. 15 (1984); *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987).

[9] *Forsyth County*, 505 U.S. at 129; *accord New York v. Ferber*, 458 US. 747 (1982); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491,503 (1985).

[10] *Forsyth County*, 505 U.S. at 129; *City of Lakewood*, 486 US. at 755-756; *accord Shuttlesworth*, 394 U.S. at 151; *Cox v. Louisiana*, 379 U.S. 536 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 321-322 (1958); *Kunz v. New York*, 340 U.S. 290, 294 (1951); *Niemotko v. Maryland*, 340 U.S. 268 (1951); *Saia v. New York*, 334 U.S. 558 (1948).

[11] *City of Lakewood*, 486 U.S. at 757.

[12] *City of Lakewood*, 486 U.S. at 758 ("Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without the

46. When the determination of who may speak and who may not is left to the unbridled discretion of a government official, it has been uniformly held that such statutes impose censorship on the public and hence are unconstitutional, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.[13]

47. A statute that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view."[14]

48. Courts may not constitutionally presume a decision-maker will act in good faith and adhere to standards absent from a statute's face nor write non-binding limits into an otherwise silent state statute.[15]

49. Where, as here, a law subjecting the exercise of First Amendment freedoms to prior restraint fails to contain "narrow, objective, and definite standards to guide the licensing authority" and "involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the [decision-maker]," it is unconstitutional.[16]

50. The road sign statute is unconstitutional both on its face and as applied to the Plaintiff.[17]

---

use of guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression."); *see also Cox v. Louisiana,* 379 US. at 557.

[13] *City of Lakewood,* 486 U.S. at 763-764; *Cox* v. *Louisiana,* 379 U.S. at 557.

[14] *Forsyth County,* 505 U.S. at 130 (quoting *Heffron* v. *Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 649 (1981).

[15] *City of Lakewood,* 486 U.S. at 770.

[16] *Forsyth County,* 505 U.S. at 131; *City of Lakewood,* 486 U.S. at 769-772; *Transportation Alternatives, Inc.* v. *City of New York,* 340 F.3d 72, 78 (2nd Cir. 2003).

[17] "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *City of Ladue,* 512 U.S. at 59 (O'Connor, J. concurring). Even where the government has declared a policy of promoting aesthetics and traffic safety, both recognized as "substantial governmental goals," *see Arlington County Republican Comm.,* 983 F.2d at 594, restrictions intended to accomplish those interests have failed to pass strict scrutiny and have been struck down. *See, e.g., City of Ladue,* 512 U.S. at 43; *Rappa v. New Castle County,* 18 F.3d 1043 (3rd Cir.1994); *Arlington County Republican Committee,* 983 F.2d at 587.

**First Amendment Violation**

51. At all relevant times, the signs removed by Defendant Driscoll were free standing signs (with the exception of the sign Defendant Driscoll ultimately permitted to remain on the property) posted on private property outside the limits of the public highway, and therefore were not subject to regulation under the road sign statute.

52. Accordingly, Defendant Driscoll's removal and/or blocking of Plaintiff's signs was unlawful and in violation of Plaintiff's First Amendment right to engage in political speech.

**Irreparable Harm and Damages**

53. The Defendants' actions in enforcing and threatening to enforce the road sign statute constitute a violation of the Plaintiff's right to freedom of speech protected under the First and Fourteenth Amendments to the United States Constitution and Article 1, §21 of the Rhode Island Constitution.

54. Even a temporary deprivation of First Amendment freedom of expression rights is generally sufficient to establish irreparable harm.[18]

55. The Defendants' actions in enforcing and threatening to enforce the road sign statute and thereby placing Plaintiff in the position of either refraining from protected speech or facing prosecution for violation of the road sign statute, constitute irreparable harm for which Plaintiff has no adequate remedy at law.

56. That as a direct and proximate result of the Defendants' acts and/or omissions, including but not limited to those described herein, the Plaintiff has suffered and will continue to suffer mental anguish, property damage to his signs, impairment and deprivation of his civil rights, expenses for legal services, and other great damage.[19]

---

[18] *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *see also Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975).

**Intentional Conduct**

57. At all relevant times, Defendants acted intentionally, willfully, maliciously, and/or with reckless or callous indifference to Plaintiff's clearly established constitutional rights. Furthermore, at all relevant times, Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's civil rights.

58. At all relevant times, Defendants were motivated by malice, wantonness or willfulness of an extreme nature.

## VI. Claims for Relief

59. Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 58 above.

### COUNT ONE
### Impairment of Freedom of Speech in Violation of 42 U.S.C. §1983

60. Defendants, acting under the color of state law, by their acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of and placed unlawful restrictions on his freedom of expression in violation of Plaintiff's right to freedom of speech, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

### COUNT TWO
### Impairment of Freedom of Speech in Violation of Article 1, §21 of the Rhode Island Constitution

61. Defendants, acting under the color of state law, by their acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of and placed unlawful restrictions on his freedom of expression in violation of Plaintiff's right to freedom of

---

[19] *Carey v. Piphus*, 435 U.S. 247, 266-267 and n. 24 and n. 25 (1978).

speech, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §21 of the Rhode Island Constitution.

## VII. Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A preliminary and permanent injunction restraining and enjoining Defendants from enforcing the road sign statute in violation of the Plaintiff's right to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 1, §21 of the Rhode Island Constitution.

2. A declaratory judgment declaring that R.I.G.L. §11-22-2 is unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1, §21 of the Rhode Island Constitution on its face and/or as applied to Plaintiff.

3. A declaratory judgment that the Defendants, in the manner described herein, violated the First and Fourteenth Amendments to the United States Constitution and Article 1, §21 of the Rhode Island Constitution by depriving Plaintiff of and placing impermissible restrictions on Plaintiff's right to freedom of speech.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of reasonable attorney's fees and costs of litigation to Plaintiff's attorney pursuant to 42 U.S.C. §1988.

7. Such other and further relief as this Court deems just and proper.

## VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

PLAINTIFF,
**RODNEY D. DRIVER**
By his attorneys,

**Date: August 2, 2007**

**Richard A. Sinapi, Esq.** (#2977)
**American Civil Liberties Union, R.I. Affiliate**
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920
Phone: (401) 944-9690; FAX: (401) 943-9040

## VERIFICATION OF COMPLAINT

Now comes the Plaintiff, **Rodney D. Driver**, being duly sworn, and does hereby depose and say as follows:

1. That I am the Plaintiff in the within matter.

2. That I have read the above Complaint and acknowledge the factual allegations alleged therein to be true and accurate to the best of my knowledge, information, and belief.

3. That I have made this **Verification of Complaint** in support of my prayers therein for judgment and relief against the Defendants.

**Rodney D. Driver**

Subscrbed and sworn to before me in **Cranston** on this 2ND day of **August, 2007**.

(name)
**NOTARY PUBLIC**
**My Commission Expires:** ______________

OFFICIAL SEAL
RICHARD A. SINAPI
NOTARY PUBLIC – RHODE ISLAND
My Comm. Expires 06-22-2009