**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RODNEY D. DRIVER,** **Plaintiff** | : | |
| **v.** | : | **C.A. No. 07-291S** |
| **TOWN OF RICHMOND**, by and through its Treasurer, **DAVID KRUGMAN**, and **RAYMOND A. DRISCOLL,** in his individual and official capacities as Chief of Police of the Town of Richmond, **Defendants** | : | |

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## I. INTRODUCTION

This action is brought by the Plaintiff, Rodney D. Driver, seeking declaratory and injunctive relief and monetary damages for acts and/or omissions of the Defendants in violation of Plaintiff's right to freedom of speech protected under the First and Fourteenth Amendments to the United States and under Article 1, §21 of the Rhode Island Constitution. Plaintiff seeks relief for violation of his federal constitutional rights pursuant to 42 U.S.C. §1983 and seeks relief directly under the Rhode Island Constitution for violation of his state constitutional rights, *Jones v. State of Rhode Island*, 724 F. Supp. 25, 34-36 (D.R.I. 1989).

Plaintiff has filed a motion pursuant to Fed.R.Civ.P 56 and Lr. Cv. 56 seeking partial summary judgment against the Defendants as to liability on both counts alleged in the Verified Complaint. Plaintiff contends that he is entitled to partial judgment as a matter of law, insofar as the statute which Defendants claim authorized their actions, R.I.G.L. §11-22-2, is unconstitutional on its face because it vests unbridled discretion in the local city or town chief of police over whether to permit or deny expressive activity. The State of Rhode Island has moved to intervene as *amicus curiae* pursuant to 28 U.S.C. §2403 and Fed.R.Civ.P 24.

## II. SUMMARY

It is beyond dispute that at the core of free speech protection under the state and federal constitutions is political speech. It is undisputed in this case that on several occasions, Defendant Driscoll, acting in his capacity as Chief of Police of the Defendant Town, took down the Plaintiff's political signs announcing his candidacy for the United States Congress, which were posted across the street from the main entrance to the Washington County Fair. It is also undisputed that Defendant Driscoll claims to have acted under the authority of a state statute, R.I.G.L. §11-22-2, which purports to grant unfettered discretion to the chief of police of the local of city or town to permit or deny certain sign postings. It is further undisputed that based on an unbroken line of Supreme Court precedent spanning nearly seventy (70) years, where, as here, the determination of who may speak and who may not is left to the unbridled discretion of a government official, such statutes impose censorship on the public and hence are unconstitutional. *See* cases cited in footnote 14, *infra*. This is so because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker. *Id.* Accordingly, based on this well settled doctrine, cited by this Court in a decision rendered just three years ago, *Osediacz v. City of Cranston*, 344 F.Supp.2d 799 (D.R.I. 2004), *rev'd on other grounds*, 414 F.3d 136 (1st Cir. 2005), this Court is compelled on the face of the record before it to enter partial summary judgment in favor of Plaintiff and against the Defendants on the grounds that R.I.G.L. §11-22-2 is unconstitutional on its face, because it vests unbridled discretion in the local city or town chief of police over whether to permit or deny expressive activity.

## III. MATERIAL FACTS

### Parties

Defendant Raymond A. Driscoll ("Driscoll") is the Chief of Police of the Defendant Town of Richmond ("Town") and is the principal policy-making official of the Town Police Department. Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment ("SUF") at ¶3. At all relevant times, Plaintiff Rodney D. Driver ("Plaintiff") was a candidate for the United States Congress in the Second District of Rhode Island. SUF at ¶4.

### Chronology of Events

At all relevant times, the owners of real estate located at 75 Richmond Townhouse Road, Route 112, Richmond, Rhode Island ("property"), which is situated opposite the Washington County Fair Grounds ("fair grounds"), authorized Plaintiff to display on their property a two (2') foot by (4') foot political campaign sign promoting his candidacy ("sign") during the Washington County Fair ("fair"). SUF at ¶5. The sign was posted directly opposite the only motor vehicle ingress and egress and main entrance to the fair grounds, where thousands of patrons must pass during the course of the fair each year. SUF at ¶6. The fair typically takes place during the third week of August. SUF at ¶7.

On or about August 2002, the sign posted on the property by Plaintiff was removed on more than one occasion. SUF at ¶8. Plaintiff subsequently learned that it was Defendant Driscoll who had removed the signs. SUF at ¶9. When confronted, Defendant Driscoll claimed that Plaintiff needed written permission to post signs on private property. SUF at ¶10. Subsequently, although he did not believe he was legally required to, Plaintiff provided Defendant Driscoll with the written authorization from the owners and re-posted the sign without further incident. SUF at ¶11.

On or about August 2006, Plaintiff posted the sign in the same location as he did in August 2002. Once again, the sign was taken down. SUF at ¶12. After replacing the sign on several occasions, Plaintiff left a message for Defendant Driscoll at the Town Police Department. SUF at ¶13. On or about August 18, 2006, Defendant Driscoll left a voice mail message on Plaintiff's phone answering machine, wherein, *inter alia*, he *claimed* that the sign was not permitted in the location and acknowledged that he had removed it.[1] SUF at ¶14. The foregoing last posted sign had been erected approximately twenty (20') feet or more from the centerline of Route 112 and approximately six (6') feet or more from the edge of the asphalt paving of the road. SUF at ¶15. Subsequently, Plaintiff re-posted the sign on the property approximately twenty-nine (29') feet from the centerline of Route 112 and fourteen and one-half (14 ½') feet from the edge of the asphalt paving of the road. SUF at ¶16. Plaintiff simultaneously erected two smaller signs on the property, both of which were more than twenty (20') feet from the centerline of Route 112 and six (6') feet from the edge of the asphalt paving of the road. SUF at ¶17. By the following morning, all three signs had been taken down by Defendant Driscoll or at his behest. SUF at ¶18.

Subsequently, Plaintiff again erected the sign approximately twenty-nine (29') feet from the centerline of Route 112 and attached a note addressed to Defendant Driscoll which read as follows: "This sign is on private property, well outside the highway right of way." SUF at ¶19. This sign was not taken down. SUF at ¶20.

---

[1] ***Plaintiff <u>does not</u> hereby stipulate or imply*** *to the Court that the sign was not permitted in the location; indeed, this is what the entire lawsuit is about.* Plaintiff ***only*** maintains and offers as undisputed that this is what *Defendant Driscoll* ***claimed*** in the voice mail message.

**The Road Sign Statute**

At all relevant times, Defendant Driscoll claims to have acted under the authority of Rhode Island General Laws §11-22-2, entitled "Injuries to road signs--Advertising on highway" (road sign statute), in taking down Plaintiff's signs. SUF at ¶21. The road sign statute provides, *inter alia*, that the erection of a sign within the limits of a public highway is permitted with the consent of the local town or city chief of police. SUF at ¶22. The statute provides for criminal penalties for any violation. *Id*.

**Restrictions on Plaintiff's Free Speech**

In future elections, Plaintiff may run for political office and would like and intends to erect and display political signs in the same location or similar locations adjacent to and/or within the limits of public highways within the Town to promote his candidacy. SUF at ¶23. In future elections, Plaintiff would like and intends to erect and display political signs in the same location or similar locations adjacent to and/or within the limits of public highways within the Town to communicate and express his support and belief in prospective political candidates. SUF at ¶24. Plaintiff faces potential criminal prosecution and sanctions under the road sign statute if he erects and maintains political signs in the same location or similar locations adjacent to and/or within the limits of public highways within the Town, unless he first obtains the consent of the Chief of Police. SUF at ¶25. Accordingly, Plaintiff is in the position of either refraining from protected speech or facing prosecution for violation of the road sign statute unless the Town Chief of Police, in his unfettered discretion, consents to the placement of any such signs. SUF at ¶26.

## IV. ARGUMENT

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996); *see also, Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991); Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 534 (1st Cir. 1996); *National Credit Union Admin. Bd. v. Regine,* 795 F. Supp. 39, 62 (D.R.I. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Moreover, summary judgment is appropriate where "'the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir. 1994) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)). As expressly provided in the language of Rule 56, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis added)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. The availability of summary judgment thus turns upon whether a proper jury question is presented. *Anderson*, 477 U.S. at 249. A court may grant summary judgment on less than all claims or issues or with respect to liability only. *See* Fed.R.Civ.P. 56(c) and (d).

There is no question of fact for the jury to resolve on the issue of liability, where, as here, a plaintiff, who sustained undisputed, actual harm, claims the statute upon which the challenged governmental conduct was based is unconstitutional on its face.

**B. <u>The Statute Which Defendants Claim Authorized Their Actions, R.I.G.L. §11-22-2, Is Unconstitutional On Its Face Because It Vests Unbridled Discretion In The Local City Or Town Chief Of Police Over Whether To Permit Or Deny Expressive Activity.</u>**

**The Importance of Political Signs**

The Supreme Court has held that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office."[2] Communication by signs and posters is virtually pure speech.[3] The Supreme Court has further held that residential signs are a form of unique expression entitled to the highest degree of protection under the Free Speech Clause of the First Amendment.[4] Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means, insofar as, by their location, such signs provide information about the identity of the "speaker."[5] A person who puts up a sign at his or her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means.[6]

---

[2] *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 223 (1989).

[3] *Arlington County Republican Comm. v. Arlington County, Virginia*, 983 F.2d 587, 593 (4th Cir. 1993)(citing *Baldwin v. Redwood*, 540 F.2d 1360, 1366 (9th Cir.1976), *cert. denied, sub nom., Leipzig v. Baldwin*, 431 U.S. 913 (1977)).

[4] *City of Ladue v. Gilleo*, 512 U.S. 43, 57-59 (1994); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501 (1981)("The outdoor sign or symbol is a venerable medium for expressing political, social and commercial ideas. From the poster or 'broadside' to the billboard, outdoor signs have played a prominent role throughout American history, rallying support for political and social causes.")(internal citation and quotations omitted).

[5] *City of Ladue*, 512 U.S. at 56.

[6] *Id*. at 57.

Residential signs are an unusually cheap and convenient form of communication, particularly for a person of modest means or limited mobility, where a yard or window sign may have no practical substitute.[7] Many people do not have the time to actively participate in political campaigns, nor do they have the money to make substantial financial contributions to candidates or causes they support. Political signs are an inexpensive and simple means by which people of modest means may become involved in political campaigns and show their support for a candidate or cause.

Political sign restrictions generally have the effect of favoring incumbents over challengers, since one of the major obstacles for any challenger in a political campaign is name recognition—something which the challenger usually lacks and an incumbent usually has. Political signs are a simple and inexpensive means for a candidate without significant finances or name recognition to make his or her name known in the community.

**First Amendment Statutory Facial Challenge**

It is well settled that when a statute vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, permission.[8] It is further well established in the area of freedom of expression that an overbroad regulation may be subject

---

[7] *Id.*

[8] *City of Lakewood v. Plain Dealer Pub.* Co., 486 U.S. 750, 755-756 (1988); *accord Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 129 (1992); *Freedman v. Maryland,* 380 U.S. 51, 56 (1965)("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, *whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license* ")(emphasis added); *Lovell v. Griffin,* 303 U.S. 444, 452-453 (1938)("As the ordinance [providing for unbridled licensing discretion] is void on its face, it was not necessary for appellant to seek a permit under it").

to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable.[9]

This exception from general standing rules is based on an appreciation that the very existence of broadly written laws has the potential to chill the expressive activity of others not before the court.[10] In the area of free expression, a statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.[11] Such censorship engenders identifiable risks to free expression that can be effectively alleviated only through a facial challenge.

First, the mere existence of a government official's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused.[12] Second, the absence of express standards makes it hard to distinguish between a legitimate denial of a permit and an illegitimate abuse of censorial power, making "as applied" challenges difficult, time consuming and expensive, such that speakers of modest means are more likely to capitulate to the views of the censor rather than mount a challenge.[13]

---

[9] *Forsyth County*, 505 U.S. at 129; *accord City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798-799, and n. 15 (1984); *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987).

[10] *Forsyth County*, 505 U.S. at 129; *accord New York v. Ferber*, 458 US. 747 (1982); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491,503 (1985).

[11] *Forsyth County*, 505 U.S. at 129; *City of Lakewood*, 486 US. at 755-756; *accord Shuttlesworth*, 394 U.S. at 151; *Cox v. Louisiana*, 379 U.S. 536 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 321-322 (1958); *Kunz v. New York*, 340 U.S. 290, 294 (1951); *Niemotko v. Maryland*, 340 U.S. 268 (1951); *Saia v. New York*, 334 U.S. 558 (1948).

[12] *City of Lakewood*, 486 U.S. at 757.

[13] *City of Lakewood*, 486 U.S. at 758 ("Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating

**Unbridled Discretion to Permit or Deny Speech Is Unconstitutional**

When the determination of who may speak and who may not is left to the unbridled discretion of a government official, it has been uniformly held that such statutes impose censorship on the public and hence are unconstitutional, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.[14]

A statute that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view."[15] Courts may not constitutionally presume a decision-maker will act in good faith and adhere to standards absent from a statute's face nor write non-binding limits into an otherwise silent state statute.[16]

Where, as here, a law subjecting the exercise of First Amendment freedoms to prior restraint fails to contain "narrow, objective, and definite standards to guide the licensing

---

against disfavored speech. Without the use of guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression."); *see also Cox v. Louisiana*, 379 US. at 557.

[14] *City of Lakewood v. Plain Dealer Pub.* Co., 486 U.S. 750, 769-772 (1988); *accord Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992); *Shuttlesworth v. Birmingham*, 394 U.S. 147,151 (1969); *Freedman v. Maryland*, 380 U.S. 51, 56 (1965); *Cox v. Louisiana*, 379 U.S. 536 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 321-322 (1958); *Kunz v. New York*, 340 U.S. 290, 294 (1951); *Niemotko v. Maryland*, 340 U.S. 268 (1951); *Saia v. New York*, 334 U.S. 558 (1948); *Lovell v. Griffin,* 303 U.S. 444, 452-453 (1938); *Transportation Alternatives, Inc.* v. *City of New York*, 340 F.3d 72, 78 (2nd Cir. 2003); *Osediacz v. City of Cranston*, 344 F.Supp.2d 799, 812 (D.R.I. 2004), *rev'd on other grounds*, 414 F.3d 136, 143 (1st Cir. 2005).

[15] *Forsyth County*, 505 U.S. at 130 (quoting *Heffron* v. *Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981).

[16] *City of Lakewood*, 486 U.S. at 770; *accord Osediacz*, 344 F.Supp.2d at 814.

authority" and "involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the [decision-maker]," it is unconstitutional.[17]

**The Road Sign Statute Is Unconstitutional On Its Face**[18]

***Standing***

The undisputed facts establish that Plaintiff has standing to bring this constitutional challenge to the road sign statute. His political signs were taken down by the Defendant Driscoll acting in his capacity as Town Chief of Police, who claims to have acted based on the authority of that statute. SUF at ¶¶4-22. The Plaintiff has also alleged an intention in the future to erect and display political signs in the same or similar locations adjacent to and/or within the limits of public highways within the Town to promote his candidacy or express support for prospective political candidates. SUF at ¶¶23-24. However, he is reluctant to do so, insofar as he faces potential criminal prosecution unless, in the unfettered exercise of his discretion, Defendant Driscoll or his successor deigns to grant his or her approval. SUF at ¶¶25-26. Plaintiff's speech was impaired and curtailed in the past and he has a reasonable apprehension of impairment of his speech in the future from enforcement of the road sign statute.[19] Plaintiff has established sufficient harm to afford him standing to challenge the statute.[20]

---

[17] *Forsyth County*, 505 U.S. at 131; *City of Lakewood*, 486 U.S. at 769-772; *Transportation Alternatives, Inc.* v. *City of New York*, 340 F.3d 72, 78 (2nd Cir. 2003); *Osediacz*, 344 F.Supp.2d at 812.

[18] "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *City of Ladue*, 512 U.S. at 59 (O'Connor, J. concurring). Even where the government has declared a policy of promoting aesthetics and traffic safety, both recognized as "substantial governmental goals," *see Arlington County Republican Comm.*, 983 F.2d at 594, restrictions intended to accomplish those interests have failed to pass strict scrutiny and have been struck down. *See, e.g., City of Ladue*, 512 U.S. at 43; *Rappa v. New Castle County*, 18 F.3d 1043 (3rd Cir.1994); *Arlington County Republican Committee*, 983 F.2d at 587.

[19] Even a temporary deprivation of First Amendment freedom of expression rights is

***Unbridled Discretion Under the Road Sign Statute***

The road sign statute[21] permits the erection of signs within the limits of the "public highway" provided that consent is obtained from the local city or town chief of police. There are no "narrow, objective, and definite standards to guide" such a determination by the local chief of police. Indeed, there is no limitation whatsoever on the exercise of his or discretion. Based on an unbroken line of Supreme Court precedent spanning nearly seventy (70) years, where, as here, the determination of who may speak and who may not is left to the unbridled discretion of a

---

generally sufficient to establish irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975).

[20] *See Osediacz v. City of Cranston*, 414 F.3d 136, 143 (1st Cir. 2005)(record must show either evidence of actual harm or sufficient evidence to indicate objectively reasonable possibility plaintiff would be subject to allegedly unconstitutional governmental approval because there is no limitation on decision-maker's exercise of discretion)(citing *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183-84 (2000)(explaining plaintiff *need not* show certainty of future harm to establish standing, so long as there is reasonable threat of such harm)).

[21] Section §11-22-2 ("road sign statute") reads as follows in pertinent part:

> A person who willfully or maliciously: (1) displaces, removes, injures, destroys, or places a political advertisement on a mile board, mile stone, danger sign or signal, or guide sign or post, or any inscription on it, lawfully within a public highway; (2) in any manner paints, prints, places, puts, or affixes, or causes to be painted, printed, placed, or affixed, any business, commercial advertisement on or to any stone, tree, fence, stump, pole, building, or other object which is the property of another, without first obtaining the written consent of the owner, or (3) in any manner paints, prints, places, puts, or affixes, or causes to be painted, placed, or affixed, an advertisement on or to any stone, tree, fence, stump, pole, mile board, mile stone, danger sign, danger signal, guide sign, guide post, billboard, building, or other object within the limits of a public highway, without first obtaining the written consent of the chief of police of the city or town in which the highway is located; is punishable by a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment for not more than ten (10) days, or both. * * * Any advertisement in or upon a public highway in violation of the provisions of this section may be taken down, removed or destroyed by anyone. * * *

SUF at ¶22.

government official, such statutes impose censorship on the public and hence are unconstitutional. *See* cases cited in footnote 14, *supra*. This is so because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker. *Id.* Nor may this Court constitutionally presume the local chief of police did or will act in good faith and adhere to standards absent from the statute's face nor write non-binding limits into an otherwise silent state statute. *See* cases cited in footnote 16, *supra*.

As this Court noted in a very recent decision, the "doctrine forbidding unbridled discretion . . . requires that the limits the city claims are implicit in its law be made explicit." *Osediacz v. City of Cranston*, 344 F.Supp.2d 799, 812 (D.R.I. 2004), *rev'd on other grounds*, 414 F.3d 136, 143 (1st Cir. 2005)(reversing on standing grounds but noting that standardless discretion in mayor to approve display on public property was constitutionally suspect and encouraging city to abandon or modify policy)(quotations and citation omitted). *Osediacz* involved a constitutional challenge to a policy of the City of Cranston that permitted members of the public to erect holiday and seasonal decorations on the city hall lawn, subject to approval of the mayor or his designee. 344 F.Supp.2d at 802. Like the road sign statute in the case at bar, the policy in *Osediacz* lacked any standards limiting the discretion of the mayor to approve displays. Due to the lack of "a showing of explicit limits on [the mayor's] approval discretion," not only did this Court deny the defendants' motion for summary judgment, but it took the rather extraordinary action of *sua sponte* entering summary judgment for plaintiff based on the well settled Supreme Court doctrine discussed above forbidding unbridled discretion of government officials to permit or deny expressive activity. 344 F.Supp.2d at 812-815 (The constitutional line is crossed where "a government body creates a limited public forum that unduly restricts

potential speakers by subjecting speech to unbridled official approval within the context of a policy of prior restraint.”).

## V. CONCLUSION

**WHEREFORE**, for all the foregoing reasons, Plaintiff respectfully prays that this Court:

1. Grant partial summary judgment in favor of Plaintiff and against the Defendants as to liability on both counts alleged in the Verified Complaint on the grounds that the statute which Defendants claim authorized their actions, R.I.G.L. §11-22-2, is unconstitutional on its face.

2. Declare that R.I.G.L. §11-22-2 is unconstitutional on its face in violation of the First and Fourteenth Amendments to the United States Constitution and Article 1, §21 of the Rhode Island Constitution.[22]

3. Enjoin Defendants from enforcing R.I.G.L. §11-22-2.

4. Continue the matter for such further proceedings as may be necessary, including the determination of an appropriate award of attorney’s fees pursuant to 42 U.S.C. §1988.

PLAINTIFF,
**RODNEY D. DRIVER**
By his attorneys,

**Date: November 5, 2007**

**/s/ Richard A. Sinapi**
**Richard A. Sinapi, Esq**. (#2977)
**American Civil Liberties Union, R.I. Affiliate**
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920
Phone: (401) 944-9690; FAX: (401) 943-9040

[22] In the free speech context, conduct violating the First and Fourteenth Amendments to the United States Constitution also violates Article 1, §21 of the Rhode Island Constitution. *Town of Barrington v. Blake*, 568 A.2d 1015, 1018 (R.I.1990)(noting similarity between free speech provision of First Amendment and Article 1, §21 and concluding that in resolving free speech issue presented court would be guided by pronouncements of United States Supreme Court).

## CERTIFICATION

**TO:** **Joseph F. Penza, Esq.**
**Olenn & Penza, LLP**
**530 Greenwood Avenue**
**Warwick, RI 02886**

**Rebecca Tedford Partington, Esq.**
**Assistant Attorney General**
**State of Rhode Island**
**150 South Main Street**
**Providence, RI 02903**

I hereby certify that a true copy of the within document was caused to be served upon the above named on this **5th** day of **November**, **2007**.

**/s/ Richard A. Sinapi**