**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RODNEY D. DRIVER,**
**Plaintiff**

**v.** **CA. No. 07-291S**

**TOWN OF RICHMOND, by and through its Treasurer, DAVID KRUGMAN, and RAYMOND A. DRISCOLL, in his Individual and official capacities as Chief of Police of the Town of Richmond,**
**Defendants**

**RESPONSE OF AMICUS CURIAE, STATE OF RHODE ISLAND, TO PLANTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before reaching the merits of the allegations made against the Defendants, Plaintiff asks this Court to declare unconstitutional the state statute relied upon by Richmond Police Chief Driscoll when the Chief removed political campaign signs placed within public highway bounds. Plaintiff asserts a first amendment statutory challenge, alleging that the road sign statute is unconstitutional on its face.

Plainly stated, Rhode Island General Laws § 11-22-2 is a content-neutral statute that withstands intermediate scrutiny. The statutory provision[1] targeted by Plaintiff serves the limited and necessary purpose of maintaining traffic safety and it leaves ample alternative channels for communication. To be sure, this statute requires discretion by municipal Police Chiefs to determine whether or not any sign presents a safety hazard.

[1] Precisely, Plaintiff challenges R.I. Gen. Laws § 11-22-2(3), which provides that "[a] person who willfully or maliciously: [ ](3) in any manner paints, prints, places, puts, or affixes … an advertisement on or to any stone, tree, fence, stump, pole, mile board, mile stone, danger sign, danger signal, guide sign, guide post, billboard, building, building, or other object within the limits of a public highway, without first obtaining the written consent of the chief of police of the city or town in which the highway is located" may be subject to criminal fines and/or penalties.

However, this discretion is not unfettered. Instead, the standards provided by statute are definite, but also reasonable, so that law enforcement may render his or her professional judgment on a case-by-case basis. This statute is so drafted by necessity, as every roadway and sign variable may not be articulated in a single law.

Plaintiff asks this Court to contemplate hypothetical worst-case scenarios to illegitimize R.I. Gen. Laws § 11-22-2. Instead, the State asks this Court to review the statute based on the reasonable and actual application it allows. The State urges this Court to determine only whether this statute passes the constitutional threshold and not whether it meets ideal standards. This Court should reject Plaintiff's challenge based on the standard articulated in the seminal signage case of Members of the City Council of the City of Los Angeles v. Taxpayers For Vincent, 466 U.S. 789 (1994). In Vincent, the United States Supreme Court states that a statute may be held facially unconstitutional "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" Id. at 796. The State submits that this statute is constitutional.

**The Legislation is Presumed to be Constitutional**

"All laws regularly enacted by the Legislature are presumed to be constitutional and valid." City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). It is well settled that this Court should "approach constitutional questions with great deliberation, exercising [it's] power in this respect with the greatest possible caution." DEPCO v. Brown, 659 A.2d 95 (R.I. 1995). It is incumbent upon the Court to give effect, if possible, to a State statute. United Nuclear Corp. v. Cannon, 553 F.Supp.1220 (D.R.I. 1982). Accordingly, a Court must "make every reasonable intendment in favor of the

constitutionality of the legislative act." City of Pawtucket, 662 A.2d at 45. These maxims are an outgrowth of the understanding and respect given by one branch of government to the other—the wisdom or necessity of a law is for the legislature to determine, and not for the Court. FCC v. Beach Communications, Inc., 508 U.S. 307 (1993).

In reviewing the constitutionality of enacted statutes, the Rhode Island Supreme Court has noted that "[b]ecause of the broad plenary power of the general assembly, [the] evaluation of legislative enactments has been extremely differential; moreover, [courts have] interfered with such enactments only when the legislation at issue could be palpably and unmistakably characterized as an excess of legislative power." Kennedy v. State, 654 A.2d 708 at 711 (R.I. 1995). Courts "will not invalidate a legislative enactment unless the party challenging the enactment can prove beyond a reasonable doubt . . . that the statute in question is repugnant to a provision in the Constitution." City of Pawtucket, 662 A.2d at 45 (emphasis in original). A party challenging the constitutionality of a statute must satisfy the heightened burden of proving beyond a reasonable doubt that the statute in question is unconstitutional to obtain a ruling in its favor. Gorham v. Robinson, 57 R.I. at 7, 186 A. at 837.

Keeping in mind the deferential standard owed R.I. Gen. Laws § 11-22-2, the State further provides the following analysis:

**Statute Survives Intermediate Scrutiny**

The Supreme Court has recognized that the first amendment does not guarantee the right to communicate one's views at all times and places or in any manner. Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640 (1981). Expression,

whether oral or written, is subject to reasonable time, place, and manner restrictions. Clark v. Community For Creative Non-Violence, 468 U.S. 288 (1984). Such restrictions are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a substantial governmental interest, and they leave open ample alternative channels for communication of the information – the so-called intermediate scrutiny analysis. Id.; Vincent, 466 at 789; Ward v. Rock Against Racism, 491 U.S. 781 (1989). Intermediate scrutiny is appropriate in the instant case because the statute is content-neutral. See City of Augusta v. Sullivan, --F.3d --, 2007 WL 4357565 (1st Cir., Dec. 14, 2007); see also Lewis v. Searles, 2002 WL 31947782 (D.Vt. Oct. 23, 2002).

The principle inquiry in determining content neutrality, in speech cases generally and in

time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of the disagreement with the message it conveys. The government's purpose is the controlling consideration. Ward, 491 U.S. at 791. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech. Id. [2]

---

[2] The general principle is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others. Members of the City Council of the City of Los Angeles v. Taxpayers For Vincent, 466 U.S. 789 (1994). As held in Vincent, that general rule does not apply to invalidate the statute at issue in this case. As in Vincent, there is not even a "hint of bias or censorship" in the enactment or enforcement of the instant statute. There is no claim that R.I. Gen. Laws § 11-22-2 was designed to suppress certain ideas the State finds distasteful or that it has

In all respects, R.I. General Laws § 11-22-2 survives intermediate scrutiny. Precisely, this statute is (1) narrowly tailored to serve a (2) substantial governmental interest, (3) leaving open alternative channels for communication.

**The Statute is Narrowly Tailored**

First, the statute is narrowly tailored to limit communications via signage within the bounds of public highways; this limitation is clearly prescribed. The restriction is not as to *all* signs – it only prohibits those signs in a specified, very limited location.[3] And it is not a total ban. Specifically, anyone seeking to display a sign within public highway bounds must first obtain written permission by the local Chief of Police.

Similar restrictions have been upheld as constitutional upon the recognition of the necessity of professional judgment. In the recently decided case of City of Augusta v. Sullivan, *supra*, the First Circuit Court of Appeals upheld a local ordinance that granted police discretion to estimate the cost for a parade/march permit. The Court observed that *any given event* represents a unique circumstance requiring "experienced, professional judgment" to determine, for example, how many officers and police vehicles are necessary for traffic control purposes. Id. at 15. In that case, the Court correctly opined that no ordinance could adequately provide by purely mechanical means a formula to

---

been applied to the challengers because of the views expressed. The text of the statute is neutral and indeed it is silent concerning any speaker's point of view. Id. at 804. The instant statute is distinguishable from content-based laws. But see, e.g. Carey v. Brown, 447 U.S. 455, 468 (1980) (holding unconstitutional a content based ordinance prohibiting all picketing in residential neighborhoods unless labor related).

[3] Rhode Island Gen. Laws § 11-22-2 is distinguishable from other restrictions that directly target only political expression, for example, by prohibiting display of all campaign signs beyond a limited time period near an election date. See Maguire v. City of American Canyon, 2007 WL 1875974 (N.D. Cal. June 28, 2007) (prohibition on campaign signs displayed more than 90 days before election); see also Orazio v. Town of North Hempstead, 426 F. Supp. 1144 (D.C.N.Y. 1977).

account for variables such as intersections of differing routes and neighborhoods and the numbers of people in attendance. Id. "In the circumstances, it seems reasonable for the City to rely upon the experienced judgment of its Police Department to determine personnel and police vehicular needs for traffic control at a particular parade or march. We take judicial notice that traffic control is a major responsibility of local police departments around the nation." Id.

The Augusta Court's reasoning applies in the instant case. R. I. Gen. Laws § 11-22-2 grants limited discretion by necessity, but only so much as is necessary for law enforcement to determine whether a sign will present a safety hazard (distraction) based on the size of the sign and the circumstances of its proposed location. Precisely, the law would be unable to dictate a formula for which signs are acceptable and which signs are unacceptable at the sole intersection for an event at which two hundred and seventy five thousand (275,000) persons, the estimated number at the Washington County Fair in 2006, are in attendance.

**The Statute Furthers a Substantial Governmental Interest**

Limits on protected speech must be justified by and necessary to advance a substantial governmental interest that is unrelated to suppressing freedom of expression. Vincent, 466 at 804-05. It is undisputed that Courts have long recognized traffic safety as a substantial governmental interest and signs bordering highways as a real hazard. Abel v. Town of Orangetown, 724 F. Supp. 232, 234 (S.D.N.Y 1989) (town's interest in motorist and pedestrian safety is substantial); Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981); Lewis v. Searles, *supra*. In Lewis, the District Court of Vermont upheld the constitutionality of a statute prohibiting the use of signs along public highways upon

challenge by a political candidate running for probate judge. The Court found that traffic safety along the highway represents a substantial governmental interest. Id. at 6. The Court recognized that "[s]igns, …can distract and block the vision of drivers, and obstruct official traffic controls and signs." Id. The governmental interests, the Court concluded, are … substantial enough to justify this prohibition." Id. (also referencing "protecting scenic resources" as substantial interest). The State of Rhode Island has an equally substantial interest in ensuring that public highways are safe and free from the dangers (distractions and obstructions) that signs pose in heavily traveled or hazardous locations.

**The Statute Leaves Open Myriad Alternative Channels For Communication**

Those affected by this statute have ample alternative channels through which to communicate their ideas and information. As articulated in Lewis, "Plaintiff may …[post] signs on the land of willing private property owners, placing them on public land that has not been restricted, or by mailings, picketing, distribution of bumper stickers, door-to-door canvassing, car signs and handing out leaflets." 2002 WL 31947782 at 7.

**Plaintiff Has Failed to Meet His Burden of Proof**

Plaintiff's constitutional attack is based on a trinity of distinguishable case law related to hypothetical "what-if" scenarios that simply have no basis.

Plaintiff relies upon City of Ladue v. Gilleo, 512 U.S. 43 (1994) in support of his misplaced assertion that even legitimate traffic safety interests do not justify restrictions that fail to pass strict scrutiny. First, for the reasons cited, supra, R.I. Gen. Laws § 11-22-2 is content-neutral on its face, and therefore not subject to strict scrutiny. Moreover, the restriction in City of Ladue is wholly distinct. In that case, a city ordinance banned *all*

residential signs *but* those falling within one of ten exemptions, citing its interest in minimizing visible clutter. Id.[4] The Court, finding that Ladue "almost completely foreclosed a venerable means of communication" to political, religious, or personal messages, declared the ordinance a violation of the plaintiff resident's free speech rights. Id. at 55. The plaintiff was a private citizen who, because of the ordinance, could not lawfully place a sign in her yard protesting the Gulf War. Id. at 43.

The facts, application, and analysis in Ladue are inapplicable to the instant matter. In this case, Plaintiff challenges a content-neutral statute applicable to all signs within highways bounds. Unlike in Ladue, R.I. Gen. Laws § 11-22-2 does not explicitly carve out exceptions, nor does it infringe upon messages displayed directly within one's private land/home. As such, R.I. Gen. Laws § 11-22-2 does not endorse inconsistent or discriminatory application and it does not tread on the expressive liberties displayed at a message holder's home.

Likewise, the State distinguishes the case of Osediacz v. City of Cranston, 344 F. Supp.2d 799 (D.R.I. 2004) (*rev'd on other grounds*, 414 F.3d 136 (1st Cir. 2005)) from the instant case. Plaintiff argues that, like the policy in Cranston that permitted holiday displays on the city hall lawn only with the Mayor's approval and that was invalidated by this Court, R.I. Gen. Laws § 11-22-2 lacks any standards to temper a government official's "unbridled discretion." See *Plaintiff's Memorandum of Law in Support of His Motion For Partial Summary Judgment*, at 13. The State refutes this comparison.

---

[4] The ordinance prohibited homeowners from displaying any signs on their property except 'residence identification' signs, 'for sale' signs, and signs warning of safety hazards. The ordinance permitted commercial establishments, churches, and nonprofit organizations to erect certain signed not allowed at residences. City of Ladue v. Gilleo, 512 U.S. at 44.

Although both cases call for an analysis of the Free Speech Clause of the First Amendment, the similarities end here.

In Osediacz, this Court, after acknowledging that "[n]ot all prior restraints on speech are unconstitutional," found unacceptable Cranston's Policy requiring, as a condition of displaying a holiday decoration, that the individual provide a name, address and phone number, that the display must be "'appropriate' (i.e. 'suitable and proper')" for the holiday occasion, that the display not shock the community's consciousness and that the Mayor or his designee grant approval. Id. at 813. In that case, free speech concerns were inextricably intertwined with Establishment Clause concerns, and this Court concluded that "the balance [between deterring state-sponsored/endorsed speech and protecting free expression] is tipped inappropriately here…." Id. at 815.

Rhode Island General Laws § 11-22-2 is not a Policy endorsing explicit, subjective value judgments over individuals made to answer to their aesthetic tastes and religious beliefs. Instead, it is a narrowly tailored statute that allows limited government discretion based on the necessity of ensuring highway safety. Because free expression is not limitless, traffic safety is a substantial government interest, other means of communication abound and statutes cannot account for every situation concerning highway sign placement and risk, this statute passes constitutional muster. The State submits that the balance -- in this case, and unlike in Osediacz – between the right to free speech and a workable safety provision, is tipped appropriately.

**Conclusion**

Plaintiff alleges that the statute violates his right to freedom of speech because its provisions are overbroad, amount to prior restraint of the exercise of one's First Amendment freedoms and fail to contain narrow, objective and definite guidelines for the decision maker. Accordingly, Plaintiff submits, the statute endorses unfettered, unbridled discretion by law enforcement over whether to permit or deny expressive activity. However, Plaintiff has cited no instances where this statute has resulted in abuse or limitations of anyone's right to free speech. Instead, he merely presupposes that the statute *may* run these risks in the future. Plaintiff has provided nothing to support these assertions. His alleged constitutional woes, when objectively viewed, amount to little more than a disagreement with the Richmond Police Chief over where the "limits of the public highway" precisely begin and end on the property at issue in this case, and hence, whether or not his signs should be subject to removal pursuant to the act. See R.I. Gen. Laws § 11-22-2. Further, although Plaintiff argues that the Police Chief may pick and choose which signs are removed, Plaintiff fails to cite a single instance where the Police Chief has applied the statute or his authority in a discriminatory fashion. To the contrary, Police Chief Driscoll represents that in August, 2006, he "laid down" Plaintiff's sign, the sign of a Senate candidate named Sheeler, two real estate signs and a NASCAR product sign. Police Chief Driscoll represents that he took these actions because all five signs had been installed close enough to the pavement to be a safety hazard because it was a distraction from police officers who were directing traffic within the intersection for the Washington County Fair.

Based on the myriad subject matters of the affected signs, it is abundantly clear that Police Chief Driscoll removed these signs based on safety concerns and without

regard for the content of the messages of the signs. Chief Driscoll's uniform application of his authority pursuant to R.I. Gen. Laws § 11-22-2 demonstrates that the statute is both necessary and functional without infringing unnecessarily on the constitutional rights of those conveying messages. Removal of the signs is unrelated to their message or content, and the Town has exhibited no pattern of discrimination in its practice of removing them. See Lewis v. Searles, *supra.*

A constitutional challenger shoulders a heavy burden. This Plaintiff has failed to prove beyond a reasonable doubt that R.I. Gen. Laws § 11-22-2 is unconstitutional. Accordingly, Plaintiff's constitutional challenge must fail. The statute withstands intermediate scrutiny and should remain in full force and effect.

Respectfully submitted

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Rebecca Tedford Partington*
/s/ *Christy Hetherington*

Rebecca Tedford Partington #3890
Deputy Chief – Civil Division
Christy Hetherington, #6693
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2303/2425
Fax: (401) 222-2995

**CERTIFICATION**

I hereby certify that I have filed the within document with the United States District Court on this 20th day of December, 2007 and that a copy is available for viewing and downloading via the ECF system and that I have caused a copy to be sent to:

**Joseph F. Penza, Jr.**

jfp@olenn-penza.com,cli@olenn-penza.com,bam@olenn-penza.com

**Richard A. Sinapi**

dicks@sfclaw.com

*/s/ Rebecca Tedford Partington*
______________________________