UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RODNEY D. DRIVER,<br>Plaintiff,<br><br>v.<br><br>TOWN OF RICHMOND, by and through its Treasurer, DAVID KRUGMAN, and RAYMOND A. DRISCOLL, in his individual and official capacities as Chief of Police of the TOWN OF RICHMOND,<br>Defendants. | C.A. No. 07-291S |

DECISION AND ORDER

WILLIAM E. SMITH, United States District Judge.

In this action, Rodney D. Driver, a Rhode Islander, former professor and state legislator, and perennial candidate for the U.S. Congress, claims his First Amendment rights were violated by the Chief of Police of the small town of Richmond, Rhode Island, when his political signs were removed from their roadside locations. A hallmark of Driver's relatively low-budget campaigns has been reliance on the placement of campaign signs at busy public events. At various times in 2002 and 2006, Raymond A. Driscoll, the Chief of Police of the Town of Richmond, removed political signs posted by Driver adjacent to the Washington County Fair. Driver sued Driscoll as well as the Town, seeking declaratory and injunctive relief and monetary damages, and alleging violations of

the First Amendment of the United States Constitution,[1], as well as Article 1, Section 21 of the Rhode Island Constitution.[2] Driver has moved for partial summary judgment as to liability on the ground that Rhode Island General Laws Section 11-22-2 ("Section 11-22-2") is unconstitutional on its face because it vests unbridled discretion in local authorities over whether to permit or deny expressive activity. Adopting a kind of rope-a-dope approach to this action (perhaps sensing the infirmity of their position), neither the Town nor Driscoll filed a timely opposition to Driver's motion[3]; however, the State of Rhode Island, which was allowed to intervene as amicus curiae, has stepped (or, perhaps more

---

[1] See, e.g., Everson v. Bd. of Educ., 330 U.S. 1, 8 (1947) (making First Amendment applicable to the states through the Fourteenth Amendment).

[2] The Rhode Island Supreme Court has pronounced that the protections afforded by Article 1, Section 21 of the Rhode Island Constitution are commensurate with the protections afforded by the First Amendment to the United States Constitution. See Town of Barrington v. Blake, 568 A.2d 1015, 1018 (R.I. 1990) ("Although we acknowledge that state courts may interpret a state constitution to be more protective of individual rights than the Federal Constitution, we do not believe that Rhode Island's 1986 constitution affords more extensive protection to the picketers than the United States Constitution presently affords." (internal citation omitted)). Therefore, in resolving the constitutional issues presented by this litigation, the Court shall be guided by the authority of the U.S. Supreme Court. See id.

[3] The Town of Richmond and Driscoll eventually did file a joint opposition to Driver's motion; however, their opposition was filed well after the deadline for responsive pleadings and, in any event, simply incorporated the arguments made by the State of Rhode Island in its papers.

accurately, has been pushed) into the fray and filed a response to Driver's motion in order to defend the statute.

The Supreme Court made clear many years ago that "an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official . . . is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969) (quotation omitted). Subsection 3 of Section 11-22-2, on its face, operates as an unconstitutional prior restraint on speech because it grants the local Chief of Police (or his designee) unbridled discretion to approve or deny sign postings on even private property that overlaps with a public highway right of way. For this reason, Driver's motion for summary judgment is granted, and Section 11-22-2(3) is declared unconstitutional and unenforceable as set forth below.

I. Factual Background

The Court takes as true the facts proffered by Driver.[4] Driver has on at least two occasions stood as a candidate for the U.S. Congress in the Second Congressional District of Rhode Island.[5] During these campaigns, the owners of property located opposite the Washington County Fair Grounds authorized him to display a 2' X 4' sign advertising his candidacy during the Washington County Fair, which usually takes place during the third week of August. The sign was posted directly opposite the main entrance to the fair grounds, which was also the only point of entry or exit for motor vehicles.

In August 2002, Driscoll removed Driver's campaign sign on more than one occasion from its posted location. After Driver inquired about the removals, Driscoll claimed that Driver needed written permission from the owner to post signs on private

---

[4] In compliance with the local rules, Driver submitted a Statement of Undisputed Facts; however, neither the Town nor Driscoll submitted a responsive statement identifying any facts as to which there is any genuine issue in dispute. Local Rule 56 requires that the party who files a motion for summary judgment must also file a Statement of Undisputed Facts that "that concisely sets forth all facts that the movant contends are undisputed and entitle the movant to judgment as a matter of law." LR Cv 56(a)(1). "[A]ny fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." LR Cv 56(a)(3).

[5] Indeed the Court is aware that Driver has run for office on at least five occasions, though it would not come as any surprise to learn that even that estimate is low.

property. Driver subsequently provided Driscoll with copies of the written authorization he had received from the property owners and re-posted the sign without further incident.

In August 2006, Driver again ran for the congressional seat, and posted a sign advertising his candidacy in the same location as in August 2002. Apparently, the sign was removed several times[6], because after repeatedly replacing it, Driver left a message for Driscoll -- presumably protesting the removal -- at the Town Police Department. On August 18, 2006, Driscoll left Driver a voicemail message in which he acknowledged removing the sign and claimed that the sign was not permitted in the location it was posted. The sign had been posted at least 20 feet from the centerline and at least 6 feet from the paved edge of Route 112. After receiving Driscoll's message, Driver re-posted the sign on the same property but this time placed it at least 29 feet from the centerline and at least 14.5 feet from the paved edge of Route 112. Plaintiff also posted two new signs on the property, both of which were at least 20 feet from the centerline and 6 feet from the paved edge of Route 112. The next morning, once again, Driver's signs had been taken down by Driscoll or at Driscoll's instruction.

Undeterred, Driver again erected his sign at least 29 feet from the centerline of Route 112 and attached to it a note

---

[6] In his Statement of Undisputed Facts, Plaintiff does not expressly allege how many times it was removed.

addressed to Driscoll which read: "This sign is on private property, well outside the highway right of way." This time, the sign was not taken down. Plaintiff subsequently commenced this action and now moves for partial summary judgment as to liability.

II. Standard of Review

Summary judgment is appropriately granted where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, the basic facts are not in dispute. Where there are no significant disagreements about the basic facts, a court may treat the parties as though they have submitted their dispute as a "case stated" and decide the case as a matter of law. See EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995) (citing Federación de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)).

III. Discussion

A.

Although neither Driver nor the State directly raised the issue, the Court has considered whether this dispute is moot to the point of being nonjusticiable. See North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority."). The Court is "not in the business of pronouncing

that past actions which have no demonstrable continuing effect were right or wrong." Spencer v. Kemna, 523 U.S. 1, 18 (1998). The fact of the matter is that Driver's campaigns have ended, at least for now.[7] His campaigns over, the signs presumably would have been removed voluntarily long ago, regardless of Driscoll's predilections. See, e.g., Flynt v. Weinberger, 762 F.2d 134, 135 (D.C. Cir. 1985) (challenge to ban on press coverage declared moot when Grenada invasion ended). Nevertheless, this dispute raises issues that fall within the narrow exception to the mootness doctrine which allows litigation of cases that are "capable of repetition, yet evading review." Spencer, 523 U.S. at 17. This exception applies where: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Id. (alterations and citations omitted).

Disputes arising from political elections often fall within the "capable of repetition, yet evading review" exception "because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." Caruso v. Yamhill County ex rel. County Com'r, 422 F.3d 848, 853 (9th Cir.

---

[7] Driver continues to maintain an Internet site dedicated to his 2006 campaign; however, the site makes no mention of any 2008 campaign. See http://www.roddriver.com/ (last visited on July 31, 2008).

2005) (quotation omitted); see also Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006) (challenges to campaign finance regulations evade review because litigation cannot be completed before particular election has run its course); Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir. 2005) (challenges to election laws are one of "quintessential categories" of cases satisfying "evading review" prong).

Moreover, Driver has asserted that in future elections, he "may run for political office and would like and intends to erect and display political signs in the same location or similar locations adjacent to public highways within the Town to promote his candidacy . . . [or] to communicate and express his support and belief in prospective political candidates." Compl. ¶¶ 26-27. Given Driver's prior history of maximizing his participation in the civic life of his community, the Court has little reason to doubt his expressed intention to seek office. But even if Driver chooses not to campaign for himself, he has proven regularly to be an outspoken advocate on several controversial topics, such as the conduct of U.S. foreign policy. See, e.g., Why Won't Our Leaders Stand Up to Confront Israel's Latest Round of Attacks on Civilians?, Westerly Sun, Aug. 1, 2006; Meeting the 'Enemy' in a Brutalized Iraq, The Providence Journal, March 1, 2001; News Media

Shield Us from the News, The Providence Journal, Feb. 18, 2000.[8] And political speech, the most prized and protected form of expression under the Constitution, applies as much to candidacy as to advocacy.

In addition, the Town is of the view that the statute is constitutional on its face and that Driscoll committed no offense by removing Driver's signs. See Answer ¶¶ 50-52, 53, 55-58. This suggests that, should Driver again seek office or another candidate similarly post campaign signs, it is reasonable to expect this dispute to recur. See Sec'y of Labor v. Burger King Corp., 955 F.2d 681, 683-85 (11th Cir. 1992) (voluntary cessation of objectionable conduct does not automatically render action moot unless it is absolutely clear that conduct could not be reasonably expected to recur).

In light of the above considerations, and with the Washington County Fair and an historic election season just around the corner, it is appropriate to hear and determine Driver's claims against the defendants. See Federal Election Commission v. Wisconsin Right to Life, Inc., -- U.S. --, --, 127 S. Ct. 2652, 2662-64 (2007) (reasonable expectation that same advocacy organization will be

[8] Indeed, earlier this week the Providence Journal published a guest editorial by Driver in which he accused the General Assembly of being in thrall to professional lobbyists and a corrupt political leadership. The Legislature's Spineless Sheep In (In)action, The Providence Journal, July 28, 2008.

subject to enforcement of same provision of campaign financing law in future elections).[9]

B.

All laws regularly enacted by the Rhode Island Legislature are presumed to be constitutional and valid. See R. I. Med. Soc'y v. Whitehouse, 66 F. Supp. 2d 288, 305-06 (D.R.I. 1999); City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). The Court must give effect, if possible, to a state statute, and approach all constitutional questions with caution. See DEPCO v. Brown, 659 A.2d 95, 100 (R.I. 1995); United Nuclear Corp. v. Cannon, 553 F. Supp. 1220, 1233 (D.R.I. 1982). Every reasonable inference must be made in favor of the constitutionality of a particular legislative act. See R. I. Med. Soc'y, 66 F. Supp. 2d at 305-06; City of Pawtucket, 662 A.2d at 45. Whether this Court believes an enactment to be unwise or unnecessary, for whatever reasons, is largely irrelevant, for those are judgments to be made by the legislature rather than the judiciary. See FCC v. Beach Comm'ns, Inc., 508 U.S. 307, 313-14 (1993).

Moreover, it must be remembered that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner. See, e.g., Heffron v. Int'l Soc'y for

---

[9] Section 11-22-2 is not, strictly speaking, an election law. However, given the undeniable effect that the statute has had on Driver's political campaigns, the Court sees no reason why this formal distinction should make any difference.

Krishna Consciousness, Inc., 452 U.S. 640, 647-48 (1981). Expression can be circumscribed by reasonable time, place, and manner restrictions. Clark v. Cmty. For Creative Non-Violence, 468 U.S. 288, 293-94 (1984).

First Amendment jurisprudence dictates that a particular restriction must be scrutinized initially for its content neutrality. A restriction of speech that is not content neutral will be sustained only if it survives "strict scrutiny"; that is, only if it is proven to be narrowly tailored to promote a compelling government interest. See United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000). A restriction that is content neutral, however, generally will receive more forgiving "intermediate scrutiny." Casey v. City of Newport, 308 F.3d 106, 110-11 (1st Cir. 2002); see also Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 736 (1st Cir. 1995). Intermediate scrutiny, although "more demanding than the 'rational basis' standard that is often used to gauge the constitutionality of economic regulations," Casey, 308 F.3d at 110-11, is less rigorous than strict scrutiny. Id. (quoting Arkansas Writers' Project Inc. v. Ragland, 481 U.S. 221, 231 (1987)).

Applying intermediate scrutiny, then, a content neutral regulation of speech must be narrowly tailored to serve a significant (as opposed to compelling) governmental interest, and

must leave open ample alternative channels for communication of the information. See Clark, 468 U.S. at 293; see also Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 668 (1994) (vacating district court decision that content neutral regulation of speech was constitutional because facts in the record failed to establish that narrow-tailoring requirement was met). Understandably, the burden of proof is on the government to demonstrate that its restrictions on speech are narrowly tailored. See Bd. of Trs. v. Fox, 492 U.S. 469, 480 (1989) ("[S]ince the State bears the burden of justifying its restrictions, it must affirmatively establish the reasonable fit we require.") (citation omitted).

C.

Section 11-22-2, entitled "Injuries to road signs – Advertising on highway," provides, in its entirety:

> A person who willfully or maliciously: (1) displaces, removes, injures, destroys, or places a political advertisement on a mile board, mile stone, danger sign or signal, or guide sign or post, or any inscription on it, lawfully within a public highway; (2) in any manner paints, prints, places, puts, or affixes, or causes to be painted, printed, placed, or affixed, any business, commercial advertisement on or to any stone, tree, fence, stump, pole, building, or other object which is the property of another, without first obtaining the written consent of the owner, or (3) in any manner paints, prints, places, puts, or affixes, or causes to be painted, placed, or affixed, an advertisement on or to any stone, tree, fence, stump, pole, mile board, mile stone, danger sign, danger signal, guide sign, guide post, billboard, building, or other object within the limits of a public highway, without first obtaining the written consent of the chief of police of the city or town in which the highway is located; is punishable by a fine of not less than one hundred dollars ($100) nor more

> than five hundred dollars ($500), or by imprisonment for not more than ten (10) days, or both. In addition, the person shall be required to pay any and all expenses incurred in the repair or replacement of the mile board, mile stone, danger sign or signal, or guide sign or post. Any advertisement in or upon a public highway in violation of the provisions of this section may be taken down, removed or destroyed by anyone. Any and all costs incurred by the state of Rhode Island due to damages/loss under this section shall be fully reimbursed by the party or parties causing the damage.

R. I. Gen. Laws § 11-22-2. Although Driver's complaint and motion for summary judgment appear to challenge the validity of the entire statute, it is plain from the undisputed facts and arguments advanced that what is really at issue is Section 11-22-2(3), which provides for punishment of any "person who willfully or maliciously . . . (3) in any manner paints, prints, places, puts, or affixes, or causes to be painted, placed, or affixed, an advertisement on or to any stone, tree, fence, stump, pole, mile board, mile stone, danger sign, danger signal, guide sign, guide post, billboard, building, or other object within the limits of a public highway, without first obtaining the written consent of the chief of police of the city or town in which the highway is located." The first two subsections, which prohibit, among other things, the damaging of official signs and the posting of signs on private property without permission of the property owner, do not relate to the official conduct complained of by Driver, and are not interdependent with Section 11-22-2(3).

Moreover, it is not actually known whether any of Driver's signs were posted within the limits of a public highway. Driver did not allege one way or the other whether any of his signs were located within a public highway, and he contends that the location of the public highway boundary line is, at best, unclear. In the end, however, it does not matter, for despite the uncertainty regarding whether any of Driver's signs were actually within the limits of a public highway, Chief Driscoll claimed to remove Driver's signs based on the authority given him by Section 11-22-2(3), which only relates to signs within the limits of a public highway.[10] There is no question that, if Driver was injured by Driscoll's actions, that injury is only traceable to Driscoll's invocation of Section 11-22-2(3). It is therefore appropriate to consider whether, as Driver argues, Section 11-22-2(3) is facially invalid because it vests unbridled discretion in local chiefs of police to decide whether a sign may be posted at a location that is on private property and purported to be within the limits of a public highway. See Osadiacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (standing established where plaintiff

---

[10] When he removed Driver's signs in August 2002, Driscoll claimed that Driver needed written permission from the owner to post signs on private property. Driver subsequently provided Driscoll with copies of the written authorization he had received from the property owners and re-posted the sign without further incident. It is clear from Driver's complaint and motion that he does not challenge the constitutionality of this requirement that signs on private property be posted only by permission of the property owner.

establishes (1) an injury in fact, that (2) is fairly traceable to the disputed conduct, and that (3) will be redressed by the relief sought).

It is worth stressing that the official conduct challenged here only pertains to a sign placed on private property purportedly within the limits of the public highway, and does not address the placement of a sign on a safety or information sign (such as a stop sign or mile marker) erected by public authorities. Consequently, the Court considers only whether those aspects of Section 11-22-2(3) implicated here are unconstitutional. See Regan v. Time, Inc., 468 U.S. 641, 652 (1984) ("In exercising its power to review the constitutionality of a legislative Act, a federal court should act cautiously. . . . Therefore, a court should refrain from invalidating more of the statute than is necessary."); see also Landrigan v. McElroy, 457 A.2d 1056, 1061 (R.I. 1983) (despite absence of savings clause in a statute, "a court may hold a portion of a statute unconstitutional and uphold the rest when the unconstitutional portion is not indispensable to the rest of the statute and can be severed without destroying legislative purpose and intent").

Given that Section 11-22-2(3) is indisputably content neutral, it is evaluated under intermediate scrutiny. Nonetheless, Driver argues that the statute is unconstitutional because it vests in local chiefs of police unbridled discretion to allow or remove

signs within the limits of a public highway and therefore is not narrowly tailored to serve a significant governmental interest. On the other hand, the State, carrying the water for the Town and other local governments, argues that Section 11-22-2(3) is indeed narrowly tailored because it prohibits the posting of signs only in a "specified, very limited location," and allows signs even in that location where permission has been obtained from the local chief of police. That the statute relies on the discretion of local chiefs of police is no infirmity, argues the State, since the statute "grants limited discretion by necessity, but only so much as is necessary for law enforcement to determine whether a sign will present a safety hazard (distraction) based on the size of the sign and the circumstances of its proposed location."

The State's reading of the statute is overly generous, to say the least. Certainly, not all prior restraints on speech are unconstitutional. However, such restrictions "may not delegate overly broad licensing discretion to a government official." Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 130 (1992). "The reasoning is simple: If the permit scheme 'involves appraisal of facts, the exercise of judgment, and the formation of an opinion,' by the licensing authority, 'the danger of censorship and of abridgement of our precious First Amendment freedoms is too great' to be permitted." Id. at 131 (quoting Cantwell v. Connecticut, 310 U.S. 296, 305 (1940); Se. Promotions, Ltd. v.

Conrad, 420 U.S. 546, 553 (1975)). Section 11-22-2(3) cannot overcome this hurdle, because it vests chiefs of police with unfettered discretion, unconnected to any standards related to safety or any other legitimate consideration.

The authority provided by the State actually underscores the unconstitutional character of Section 11-22-2(3). In the recently decided Sullivan v. City of Augusta, 511 F.3d 16 (1st Cir. 2007) (Sullivan II), the First Circuit upheld an Augusta, Maine ordinance insofar as it allowed the local police chief discretion to estimate the costs to be incorporated into the fee charged for the issuance of a parade permit. The relevant section of the ordinance provided: "The cost of the permit shall be one hundred dollars ($100.00), plus the costs of traffic control per city collective bargaining agreement and clean up costs, as estimated by the Police Department. The permit fee will not include the cost of police protection for public safety." Sullivan II, 511 F.3d at 22. The $100 fee was payable at the time the permit application was submitted and the balance due when the permit was issued. Id.

The district court held that the fee provision delegated overly broad discretion to the local police department to determine the traffic control-costs, which plaintiffs were required to pay as a part of the total parade permit fee. Sullivan v. City of Augusta, 406 F. Supp. 2d 92, 116-17 (D. Me. 2005) (Sullivan I).

Citing Forsyth, 505 U.S. at 132-34[11], the district court ruled that the fee provisions of the parade ordinance were lacking in narrow, objective and definite standards sufficient to guide the discretion of the local police department in estimating the costs of traffic control. Sullivan I, 406 F. Supp. 2d at 116.

The First Circuit partially reversed the decision of the district court, finding the discretion of the local police department to be far more circumscribed than that of the county administrator in Forsyth. Sullivan II, 511 F.3d at 35-36. In Forsyth, the county administrator was not limited to estimating, as part of the fee, a particular category of expenses within the administrator's expertise, such as the costs of traffic control. Instead, the administrator had discretion to decide the kind and amount of administrative and policing expenses to include (or exclude) from the fee and, it appeared, also assumed the right to charge nominal or no fees to favored groups. Sullivan II, 511 F.3d

---

[11] In Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123 (1992), a county ordinance mandated permits for private uses of public property, required advance payment of a daily fee of up to $1,000, and allowed the county administrator to "adjust the amount to be paid in order to meet the expense incident to the administration of the Ordinance and to the maintenance of public order." Id. at 126-27. The Supreme Court found the ordinance unconstitutional, taking special note of: (1) the county administrator's "unfettered discretion" to determine what expenses to include and to set the amount of the fee, and (2) the fact that the ordinance allowed the fee to include the costs of "necessary and reasonable protection of persons participating in or observing said ... activities." Id. at 133 n.11, 134. The Supreme Court held that the latter costs were the equivalent of an improper fee on the content of the speech. Id. at 133-36.

at 35 (citing Forsyth, 505 U.S. at 131-32 & n.9). In Sullivan II, by contrast, the fee-setting authority of the local police department was more confined. The parade ordinance provided that "[t]he cost of the permit shall be one hundred dollars ($100.00), plus the costs of traffic control per city collective bargaining agreement and clean up costs, as estimated by the Police Department. The permit fee will not include the cost of police protection for public safety." Id. at 22. The police department was given no discretionary authority to estimate and charge costs other than the costs of traffic control and clean-up - i.e., categories of costs within its particular expertise - nor was it authorized to vary the character of the costs as between applicants: the ordinance's use of the words "shall be" meant that the cost of each permit was to be as described by the ordinance, resulting in a uniformly-computed fee for each applicant. The cost of hiring police officers for traffic control was "per city collective bargaining agreement," requiring reference to that agreement for the amount to be paid to each officer. Finally, noted the First Circuit, the "cost of police protection for public safety," which was the item the Supreme Court found to be improperly included in the ordinance in Forsyth, was expressly excluded by the parade ordinance from the costs passed on to permit applicants. Id. at 35-36.

As the First Circuit observed, the principal area left to police discretion in estimating the parade permit costs lay in determining the number of extra officers and police vehicles to assign to a particular parade or march for traffic control purposes. Id. at 36. Here, the Court explained that parades and marches "vary enormously in terms of size, timing, duration and location, resulting often in quite different traffic control needs." Id. Thus, "[e]xperienced, professional judgment would seem to be the most likely way to estimate how many extra officers will be needed." Id. It was reasonable, concluded the Court, for Augusta to rely upon the experienced judgment of its police department to determine personnel and police vehicular needs for traffic control at a particular applicant's parade or march. Id.

The State contends that Sullivan II is directly applicable to the instant case, because Section 11-22-2(3) "grants limited discretion by necessity, but only so much as is necessary for law enforcement to determine whether a sign will present a safety hazard (distraction) based on the size of the sign and the circumstances of its proposed location." However, in contrast to the ordinance challenged in Sullivan II, Section 11-22-2(3) provides the local police chief with unfettered discretion to allow or forbid the restricted activity (here, posting of a sign on private property purportedly within the limits of a public highway). The statute makes no mention of traffic safety, or any

other purpose justifying the restrictions, and sets forth no standards based on the characteristics of a proposed sign, i.e. color, size, or shape, other than the aforementioned location "within the limits of a public highway." The State's assertion that the statute sets forth clear standards is simply not supported by the plain language of the statute. See City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770 (1988) ("[T]he doctrine forbidding unbridled discretion . . . requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."). While this Court is sympathetic to the argument that the law cannot be expected to dictate a precise formula for determining whether a particular sign posted in a particular location indeed poses a hazard, allowing the statute to operate as presently constituted would endorse an exception that swallows the rule.[12] See Lakewood, 486 U.S. at 769-70 ("To allow

---

[12] Ultimately, allowing the statute to stand would be an endorsement of a "trust me because I am the Chief of Police" standard. This was precisely the argument rejected by City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750 (1988):

> The city asks us to presume that the mayor will deny a permit application only for reasons related to the health, safety, or welfare of Lakewood citizens, and that additional terms and conditions will be imposed only for similar reasons. This presumes the mayor will act in good faith and adhere to standards absent from the ordinance's face. But this is the very presumption that the doctrine forbidding unbridled discretion disallows.
>
> Id. at 770 (emphasis added).

these illusory 'constraints' to constitute the standards necessary to bound a licensor's discretion renders the guarantee against censorship little more than a high-sounding ideal.").

The State argues that Driver is unable to cite a single instance when Driscoll applied Section 11-22-2(3) in a discriminatory fashion, but this argument misses the point because it conflates the risk of discrimination with its actual occurrence. It is, of course, appropriate for the Court to consider the manner in which a statute has been implemented in weighing a facial challenge to it. See Forsyth, 505 U.S. at 131 ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."); Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989) ("Administrative interpretation and implementation of a regulation are, of course, highly relevant to our analysis, for '[i]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a[n] .. enforcement agency has proffered.'") (quoting Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, n.5 (1982)). However, there is no evidence in this case, one way or the other, of how Driscoll -- or any other public official -- implemented the statute, apart from his repeated removal of Driver's sign. The only governmental "interpretation" of the statute that has been offered is the unsupported assertion in the

State's briefing that Driscoll removed several signs, including Driver's, from the same general location because "all five signs had been installed close enough to the pavement to be a safety hazard because it was a distraction from police officers who were directing traffic within the intersection." While the State argues that "it is abundantly clear that Police Chief Driscoll removed these signs based on safety concerns and without regard for the content of the messages of the signs," there is nothing in the record supporting such a conclusion (such as an affidavit from Driscoll).[13]

Moreover, there is simply no way of knowing what citizens, if any, may have been dissuaded by this overly broad and standardless statute from exercising their free speech rights. See Lakewood, 486 U.S. at 757 ("[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused."). Thus, even taking as true the State's assertion that Driscoll did not use his discretion in a

---

[13] Although Driver's complaint alleged that Driscoll, in his voicemail message, stated that he removed Driver's sign "for police officer safety," Compl. ¶ 15, the answer filed by the Town and Driscoll admitted only that a voicemail had been left; it "[n]either admitted nor denied . . . the exact content of that message." Answer ¶ 15. Driver's Statement of Undisputed Facts did not refer to the content of the message and, as already noted, neither the Town nor Driscoll submitted a Statement of Undisputed Facts or any objection to Driver's Statement of Undisputed Facts. Consequently, the complaint's allegation as to the content of the message has no bearing on this decision.

discriminatory fashion, Driver's motion for summary judgment must be granted.[14]

D.

By invalidating Section 11-22-2(3), as it pertains to postings on private property, the Court does not disagree that highway safety is a real concern or that the State's interest in promoting safety is substantial. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981) (traffic safety is a "substantial government goal[]"). However, that interest must be balanced against the rights of expression protected by the First Amendment, particularly with respect to political speech. See id. at 511-12.

Whether the constitutional infirmity of Section 11-22-2(3) - namely, the unbridled discretion vested in local chiefs of police - can be remedied by local regulation or must be repaired by legislative action is a question for another day. See Lakewood, 486 U.S. at 770 ("The doctrine [forbidding unbridled discretion] requires that the limits the [government] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."). What is clear is that, as presently constructed, Section 11-22-2(3), to the extent it vests unbridled discretion in local police

[14] Because the Court decides that Section 11-22-2(3) is not narrowly tailored, it does not reach the related issues of whether the statute serves a significant government interest or leaves open alternative channels of communication. See Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984).

chiefs to approve or disapprove political signs posted on private property within the limits of a public highway right-of-way, is unconstitutional under the First Amendment. The Court leaves it to the Legislature, and to the various implementing authorities, to decide that course of action which is most appropriate.

IV. Conclusion

For all of the foregoing reasons, Plaintiff's partial motion for summary judgment on the issue of liability is hereby GRANTED.

IT IS SO ORDERED.

William E. Smith
U. S. District Judge
Date: 7/31/08